# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# BIG STONE GAP DIVISION

| | | |
|---|---|---|
| **BARBARA K. LAWSON,** | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | Civil Action No. 2:05cv00055 |
| | ) | **REPORT AND** |
| | ) | **RECOMMENDATION** |
| **JO ANNE B. BARNHART**, | ) | |
| Commissioner of Social Security, | ) | By: PAMELA MEADE SARGENT |
| Defendant | ) | United States Magistrate Judge |

*I. Background and Standard of Review*

Plaintiff, Barbara K. Lawson, filed this action challenging the decision of the Commissioner of Social Security, ("Commissioner"), denying the plaintiff's claim for a period of disability insurance benefits, ("DIB"), under the Social Security Act, as amended, ("Act"), 42 U.S.C.A. § 423 (West 2003 & Supp. 2006). Jurisdiction of this court is pursuant to 42 U.S.C. § 405(g). This case is before the undersigned magistrate judge by referral pursuant to 28 U.S.C. § 636(b)(1)(B). As directed by the order of referral, the undersigned now submits the following report and recommended disposition.

The court's review in this case is limited to determining if the factual findings of the Commissioner are supported by substantial evidence and were reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). Substantial evidence has been defined as "evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It

consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). "'If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."'" *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990) (quoting *Laws*, 368 F.2d at 642).

The record shows that Lawson protectively filed her application for DIB on October 21, 2002, alleging disability as of August 2, 2002, due to neck and back pain, difficulty concentrating and depression. (Record, ("R."), at 65-67, 77, 87.) The claim was denied initially and upon reconsideration. (R. at 38-40, 43, 44-46.) Lawson then requested a hearing before an administrative law judge, ("ALJ").[1] (R. at 50.) The ALJ held a hearing on April 11, 2005, at which Lawson was represented by counsel. (R. at 27-35.)

By decision dated April 28, 2005, the ALJ denied Lawson's claim. (R. at 12-19.) The ALJ found that Lawson met the disability insured status requirements of the Act for disability purposes through the date of his decision. (R. at 18.) The ALJ found that Lawson had not engaged in substantial gainful activity since the alleged onset of disability. (R. at 18.) The ALJ found that the medical evidence indicated that Lawson suffered from severe impairments, namely chronic neck and low back pain and history of carpal tunnel syndrome, but he found that Lawson did not have an impairment or combination of impairments listed at or medically equal to one listed at 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 18.) The ALJ found that Lawson's allegations

---

[1]The ALJ dismissed Lawson's request for hearing on March 26, 2004, because the hearing request was not filed in a timely fashion. (R. at 55-56.) Lawson requested review of the ALJ's decision, (R. at 57), and by order entered on May 21, 2004, the Appeals Council remanded Lawson's claim back to the ALJ for further proceedings. (R. at 62-64.)

-2-

regarding her limitations were not totally credible. (R. at 18.) The ALJ found that Lawson had the residual functional capacity to perform light work.[2] (R. at 18.) The ALJ found that Lawson was able to perform her past relevant work as a sewing machine operator and as a receptionist. (R. at 18.) Thus, the ALJ found that Lawson was not under disability as defined in the Act at any time through the date of the decision and was not eligible for benefits. *See* 20 C.F.R. § 404.1520(f). (R. at 18-19.)

After the ALJ issued his decision, Lawson pursued her administrative appeals, (R. at 7), but the Appeals Council denied her request for review. (R. at 4-6.) Lawson then filed this action seeking a review of the ALJ's unfavorable decision, which now stands as the Commissioner's final decision. *See* 20 C.F.R. § 404.981 (2006). This case if before the court on Lawson's motion for summary judgment filed on May 24, 2006, and on the Commissioner's motion for summary judgment filed June 26, 2006.

## *II. Facts*

Lawson was born in 1948, which classifies her as "person of advanced age" under 20 C.F.R. § 404.1563(e). (R. at 30, 65.) Lawson has an eleventh-grade education and vocational training as a certified nurse's assistant. (R. at 83.) She has past relevant work experience as a sewing machine operator, a receptionist and a mental health assistant. (R. at 78.)

---

[2]Light work involves lifting items weighing up to 20 pounds at a time with frequent lifting or carrying of items weighing up to 10 pounds. If an individual can do light work, she also can do sedentary work. *See* 20 C.F.R. § 404.1567(b) (2006).

-3-

In rendering his decision, the ALJ reviewed records from St. Mary's Hospital; Johnston Memorial Hospital; Joseph Leizer, Ph.D., a state agency psychologist; Dr. Randall Hays, M.D., a state agency physician; Dr. Jolanta Herrera, M.D.; Dr. Ken Smith, M.D.; and Dr. William M. Platt, M.D.

The record shows that Dr. Jolanta Herrera, M.D., prescribed medication for Lawson's complaints of anxiety and depression from November 2001 through April 2004.[3] (R. at 108-70.) Dr. Herrera also treated Lawson intermittently for back and neck pain from August 2002 through April 2004. (R. at 108-70.) Many of these office notes indicate that Lawson suffered from no functional limitations. (R. at 117, 137, 143, 154, 156, 158, 163, 165, 167.) Office notes indicate that Lawson's complaints of back and neck pain, which occurred occasionally with upper extremity radiculopathy, resulted from a motor vehicle accident that occurred in August 2002. (R. at 159-60.) In September 2002, an MRI of Lawson's cervical spine showed spondylosis at the C4-5 level, causing displacement and compression of the cervical cord. (R. at 195-96.) Spondylotic disc bulges at the C5-6 and C6-7 levels also were noted, as well as spurring at the C3-4, C4-5 and C5-6 levels. (R. at 195-96.) An MRI of Lawson's right shoulder was normal. (R. at 197.) In October 2002, an MRI of Lawson's lumbar spine showed degenerative disc disease at multiple levels, mild narrowing of the canal at the L2-3, L3-4 and L4-5 levels and facet disease bilaterally at all levels. (R. at 193-94.) Treatment notes prior to January 2003 indicate that Lawson had full bodily range of motion, with occasional tenderness of the cervical region, lumbar region, upper thoracic area and right shoulder. (R. at 136-60.)

---

[3]The record does not contain any evidence showing that Lawson received treatment by a mental health professional.

Case 2:05-cv-00055-JPJ-PMS   Document 17   Filed 10/23/06   Page 4 of 14   Pageid#: 48

On January 6, 2003, Dr. Herrera indicated that Lawson could stand up to 15 minutes without interruption, walk up to 30 minutes without interruption and sit up to 30 minutes without interruption. (R. at 135.) Dr. Herrera indicated that Lawson could lift and carry items weighing up to five pounds. (R. at 135.) Dr. Herrera reported that Lawson's ability to reach overhead was limited and that she was unable to perform repetitive hand motion. (R. at 135.) Dr. Herrera based these limitations on Lawson's diagnosis of cervical spondylosis and multiple disc protrusions of the spine. (R. at 134.) Dr. Herrera reported that Lawson became unable to work due to her impairments on August 2, 2002. (R. at 135.) In June 2003, an x-ray of Lawson's lumbar spine showed mild spondylosis. (R. at 189.) In October 2003, an echocardiogram, a chest x-ray and an exercise stress test were normal. (R. at 182, 185-86.) Dr. Herrera treated Lawson's impairments with pain medication and physical therapy. (R. at 108-60.)

On October 11, 2002, Dr. Ken Smith, M.D., saw Lawson for her complaints of cervical and right upper extremity pain. (R. at 249-53.) Dr. Smith noted mild cervical paraspinous muscle contractions, but no misalignment, asymmetry, crepitation, tenderness, masses or deformities in the upper or lower extremities. (R. at 251.) Lawson displayed no limitations in the upper and lower extremities, and her straight leg raising was negative. (R. at 251.) Motor strength testing revealed normal strength and tone and no atrophy. (R. at 251.) Dr. Smith diagnosed neck and right upper extremity pain, cervical spondylosis without myelopathy and numbness of the right upper extremity, possibly carpal tunnel syndrome. (R. at 252.) He recommended a cervical and lumbar myelogram. (R. at 252.) On October 14, 2002, Lawson underwent a cervical and lumbar myelogram. (R. at 243-47.) The lumbar myelogram ruled out disc herniation or spinal stenosis. (R. at 243-45.) The cervical myelogram showed

degenerative disc disease. (R. at 243-45.)

On October 28, 2002, Dr. Smith reported that Lawson displayed no limitations in her upper and lower extremities. (R. at 239.) Her muscle strength and tone were normal and her gait was nonantalgic. (R. at 239.) On February 27, 2003, Dr. Smith reported findings consistent with carpal tunnel syndrome. (R. at 232-35.) He also reported that Lawson had full range of motion in her upper and lower extremities. (R. at 233.) Lawson's muscle strength and tone were normal. (R. at 233.) Dr. Smith diagnosed cervical spondylosis without myelopathy at the C3-4, C4-5 and C5-6 levels, bilateral carpal tunnel syndrome and cervical degenerative disc disease. (R. at 234.) On October 30, 2003, Dr. Smith reported that conservative care was recommended for Lawson's pain complaints, as surgical intervention was not warranted based upon radiological studies. (R. at 284.) Dr. Smith reported that his last evaluation of Lawson was on July 25, 2003, which revealed complete resolution of her symptoms with some persistent cervical and low back pain.[4] (R. at 284.)

On November 13, 2002, Dr. William M. Platt, M.D., examined Lawson for her complaints of back and neck pain. (R. at 254-57.) Lawson demonstrated symmetrical extension, flexion and rotation of the neck with some limitation. (R. at 256.) Lawson had limited lumbar spine range of motion, but her straight leg raising was normal. (R. at 256.) Dr. Platt diagnosed neck pain and right upper extremity numbness, complaints of lumbar pain, cervical spondylitic disease and possible right upper extremity cervical radiculopathy. (R. at 256.)

---

[4] Dr. Smith indicated that Lawson underwent a right carpal tunnel release on May 9, 2003, and later underwent a left carpal tunnel release on July 11, 2003. (R. at 284.) He reported that Lawson progressed "quite well." (R. at 284.)

-6-

On March 18, 2003, Dr. Randall Hays, M.D., a state agency physician, indicated that Lawson had the residual functional capacity to perform light work. (R. at 258-66.) He indicated that Lawson was limited in her ability to push/pull with her upper extremities. (R. at 260.) Dr. Hays indicated that Lawson could frequently climb ramps and stairs, balance, stoop, kneel, crouch and crawl. (R. at 261.) He indicated that she should never climb ladders, ropes or scaffolds. (R. at 261.) Dr. Hays indicated that Lawson's ability for fine manipulation and feeling was limited in her right hand. (R. at 261.) No visual or communicative limitations were noted. (R. at 262.) Dr. Hays indicated that Lawson should avoid moderate exposure to working hazards. (R. at 263.) This assessment was affirmed on June 27, 2003, by Dr. Frank M. Johnson, M.D., another state agency physician. (R. at 265.)

A Psychiatric Review Technique form, ("PRTF"), was completed by Joseph Leizer, Ph.D., a state agency psychologist, on March 18, 2003. (R. at 267-81.) Leizer indicated that Lawson suffered from a nonsevere anxiety-related disorder. (R. at 267.) He indicated that Lawson had no limitations on her activities of daily living, in maintaining social functioning or in maintaining concentration, persistence or pace. (R. at 277.) He also indicated that Lawson had not experienced episodes of decompensation. (R. at 277.)

*III. Analysis*

The Commissioner uses a five-step process in evaluating DIB claims. *See* 20 C.F.R. § 404.1520 (2006); *see also Heckler v. Campbell*, 461 U.S. 458, 460-62 (1983); *Hall v. Harris*, 658 F.2d 260, 264-65 (4th Cir. 1981). This process requires the Commissioner to consider, in order, whether a claimant 1) is working; 2) has a severe

impairment; 3) has an impairment that meets or equals the requirements of a listed impairment; 4) can return to her past relevant work; and 5) if not, whether she can perform other work. *See* 20 C.F.R. § 404.1520 (2006). If the Commissioner finds conclusively that a claimant is or is not disabled at any point in this process, review does not proceed to the next step. *See* 20 C.F.R. § 404.1520(a) (2006).

Under this analysis, a claimant has the initial burden of showing that she is unable to return to her past relevant work because of her impairments. Once the claimant establishes a prima facie case of disability, the burden shifts to the Commissioner. To satisfy this burden, the Commissioner must then establish that the claimant has the residual functional capacity, considering the claimant's age, education, work experience and impairments, to perform alternative jobs that exist in the national economy. *See* 42 U.S.C.A. § 423(d)(2) (West 2003 & Supp. 2006); *McLain v. Schweiker*, 715 F.2d 866, 868-69 (4th Cir. 1983); *Hall*, 658 F.2d at 264-65; *Wilson v. Califano*, 617 F.2d 1050, 1053 (4th Cir. 1980).

By decision dated April 28, 2005, the ALJ denied Lawson's claim. (R. at 12-19.) The ALJ found that the medical evidence indicated that Lawson suffered from severe impairments, namely chronic neck and low back pain and history of carpal tunnel syndrome, but he found that Lawson did not have an impairment or combination of impairments listed at or medically equal to one listed at 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 18.) The ALJ found that Lawson had the residual functional capacity to perform light work. (R. at 18.) The ALJ found that Lawson was able to perform her past relevant work as a sewing machine operator and as a receptionist. (R. at 18.) Thus, the ALJ found that Lawson was not under disability, as defined in the Act, at any time through the date of the decision and was not eligible

for benefits. *See* 20 C.F.R. § 404.1520(f). (R. at 18-19.)

As stated above, the court's function in the case is limited to determining whether substantial evidence exists in the record to support the ALJ's findings. The court must not weigh the evidence, as this court lacks authority to substitute its judgment for that of the Commissioner, provided her decision is supported by substantial evidence. *See Hays*, 907 F.2d at 1456. In determining whether substantial evidence supports the Commissioner's decision, the court also must consider whether the ALJ analyzed all of the relevant evidence and whether the ALJ sufficiently explained his findings and his rationale in crediting evidence. *See Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997).

Thus, it is the ALJ's responsibility to weigh the evidence, including the medical evidence, in order to resolve any conflicts which might appear therein. *See Hays,* 907 F.2d at 1456; *Taylor v. Weinberger*, 528 F.2d 1153, 1156 (4th Cir. 1975). Furthermore, while an ALJ may not reject medical evidence for no reason or for the wrong reason, *see King v. Califano*, 615 F.2d 1018, 1020 (4th Cir. 1980), an ALJ may, under the regulations, assign no or little weight to a medical opinion, even one from a treating source, based on the factors set forth at 20 C.F.R. § 404.1527(d), if he sufficiently explains his rationale and if the record supports his findings.

Lawson argues that the ALJ's decision is not supported by substantial evidence. (Brief In Support Of Motion For Summary Judgment, ("Plaintiff's Brief"), at 3-5.) Lawson argues that the ALJ erred by finding that she had the residual functional capacity to perform light work. (Plaintiff's Brief at 3-4.) Lawson also argues that the ALJ erred by ignoring her testimony with regard to her allegations of pain and

-9-

limitations. (Plaintiff's Brief at 4.) Lawson does not challenge the ALJ's finding that she could return to her past relevant work as a sewing machine operator and a receptionist if she were able to perform light work.

The ALJ found that Lawson had the residual functional capacity to perform light work. (R. at 18.) He also found that Lawson could perform her past relevant work as a sewing machine operator and as a receptionist. (R. at 18.) Treatment records from Drs. Herrara and Smith, Lawson's treating physicians, documented unremarkable clinical and diagnostic findings. Treatment notes from Dr. Herrera, dated prior to January 2003, showed full bodily range of motion, with occasional tenderness of the cervical region, lumbar region, upper thoracic area and right shoulder. (R. at 136-60.) Examinations performed by Dr. Herrera after January 2003 also revealed essentially unremarkable findings. (R. at 108-27.) Dr. Herrera treated Lawson's impairments with pain medication and physical therapy. (R. at 108-60.) Also, Dr. Herrera's restrictions placed on Lawson are contradicted by the many office notes reflecting that Lawson suffered from no functional limitations. (R. at 117, 137, 143, 154, 156, 158, 163, 165, 167.) Similarly, Dr. Smith also treated Lawson's pain complaints with conservative management and reported unremarkable clinical findings. Dr. Smith noted only "mild" cervical paraspinous muscle contractions, with no misalignment, asymmetry, crepitation, tenderness, masses or deformities in the upper or lower extremities. (R. at 251.) Lawson displayed no limitations in the upper and lower extremities, and her straight leg raising tests were negative. (R. at 251.) Lawson had normal motor strength and tone and no atrophy. (R. at 251.) She displayed no limitations in her upper or lower extremities. (R. at 239.) Dr. Smith reported that his last examination of Lawson revealed complete resolution of her symptoms, with some persistent cervical and low back pain. (R. at 284.)

A lumbar myelogram ruled out disc herniation or spinal stenosis. (R. at 240.) A cervical myelogram showed degenerative disc disease. (R. at 240.) A lumbar spine MRI on October 3, 2002, ruled out disc herniation and showed disc degeneration. (R. at 193-94.) A lumbar spine x-ray taken on June 21, 2003, showed mild spondylosis. (R. at 189.) Dr. Hays found that Lawson had the residual functional capacity to perform light work. (R. at 258-66.) Lawson received no mental health treatment by a mental health provider or psychiatric hospitalizations. She was prescribed psychotropic medication by her primary treating physician. (R. at 108-80.) Furthermore, psychologist Leizer indicated that Lawsons suffered from a nonsevere anxiety-related disorder. (R. at 267.) Based on this, I find that substantial evidence exists to support the ALJ's finding that Lawson had the residual functional capapcity to perform light work and that she could perform her past relevant work as a sewing machine operator and as a receptionist.

Lawson further argues that the ALJ did not properly consider her allegations of pain. (Plaintiff's Brief at 4.) Based on my review of the ALJ's decision, however, I find that the ALJ considered Lawson's allegations of pain in accordance with the regulations. The Fourth Circuit has adopted a two-step process for determining whether a claimant is disabled by pain. First, there must be objective medical evidence of the existence of a medical impairment which could reasonably be expected to produce the actual amount and degree of pain alleged by the claimant. *See Craig v. Chater*, 76 F.3d 585, 594 (4th Cir. 1996). Second, the intensity and persistence of the claimant's pain must be evaluated, as well as the extent to which the pain affects the claimant's ability to work. *See Craig*, 76 F.3d at 595. Once the first step is met, the ALJ cannot dismiss the claimant's subjective complaints simply

-11-

because objective evidence of the pain itself is lacking. *See Craig*, 76 F.3d at 595. This does not mean, however, that the ALJ may not use objective medical evidence in evaluating the intensity and persistence of pain. In *Craig*, the court stated:

> Although a claimant's allegations about her pain may not be discredited solely because they are not substantiated by objective evidence of the pain itself or its severity, they need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment, and the extent to which that impairment can reasonably be expected to cause the pain the claimant alleges she suffers....

76 F.3d at 595.

I find that substantial evidence supports the ALJ's finding that Lawson's subjective complaints of disabling functional limitations were not credible. The ALJ properly considered the objective evidence of record. (R. at 16.) While Lawson complained of back and knee pain, the ALJ noted that the record did not reveal treatment since April 2004. (R. at 17.) Moreover, records from Lawson's treating physician subsequent to January 6, 2003, show that examinations of Lawson's back and neck were essentially normal. The ALJ also noted that Lawson had not received treatment for her complaints of left hand pain since July 2003. (R. at 17.) Based on this, I find that the ALJ considered Lawson's allegations of pain in accordance with the regulations. I further find that substantial evidence supports the ALJ's finding that Lawson's allegations of disabling pain were not totally credible.

I also find that the substantial evidence supports the ALJ's finding that Lawson did not suffer from a severe mental impairment. While Lawson's treating physician prescribed medication for complaints of anxiety and depression, the physician did not

-12-

place any restriction on Lawson as a result. Furthermore, Leizer, the only psychologist to address the issue, has stated that Lawson did not suffer from a severe mental impairment.

## PROPOSED FINDINGS OF FACT

As supplemented by the above summary and analysis, the undersigned now submits the following formal findings, conclusions and recommendations:

1. Substantial evidence exists to support the ALJ's finding that Lawson had the residual functional capacity to perform light work;

2. Substantial evidence exists to support the ALJ's finding that Lawson did not suffer from a severe mental impairment; and

3. Substantial evidence exists to support the ALJ's finding that Lawson was not disabled under the Act.

## RECOMMENDED DISPOSITION

The undersigned recommends that the court deny Lawson's motion for summary judgment, grant the Commissioner's motion for summary judgment and affirm the Commissioner's decision denying benefits.

## Notice to Parties

Notice is hereby given to the parties of the provisions of 28 U.S.C.A. § 636(b)(1)(c) (West 1993 & Supp. 2006):

> Within ten days after being served with a copy [of this

Report and Recommendation], any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

Failure to file timely written objections to these proposed findings and recommendations within 10 days could waive appellate review. At the conclusion of the 10-day period, the Clerk is directed to transmit the record in this matter to the Honorable James P. Jones, Chief United States District Judge.

The Clerk is directed to send certified copies of this Report and Recommendation to all counsel of record at this time.

DATED: This 23rd day of October 2006.

/s/ *Pamela Meade Sargent*
UNITED STATES MAGISTRATE JUDGE

-14-